**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rickman Brown, et al., | No. CV-16-02801-PHX-SRB |
| Petitioners, | **ORDER** |
| v. | |
| Eva Sperber-Porter, et al., | |
| Respondents. | |

Petitioners/Judgment Creditors Rickman Brown, Jeff Ross, Evans, Sholz, Williams & Warncke LLC, and Ross and Orenstein LLC f/k/a Ross, Orenstein & Baudry LLC ("Petitioners") have filed a Motion to Compel Compliance with Subpoena (Eva Sperber-Porter). (Doc. 287.) The motion pertains to a subpoena to testify at a deposition that was served on Eva Sperber-Porter ("Sperber-Porter") on April 25, 2018. (*Id.* at 3; Doc. 283.) Sperber-Porter objected to the subpoena. (Doc. 273.)

Petitioners request an order that (a) overrules Sperber-Porter's objections to the subpoena, (b) grants their motion, (c) instructs Sperber-Porter to produce the requested documents within fourteen days of the Court's order, and (d) instructs Sperber-Porter to appear for a deposition at a mutually convenient date and time, between seven and fourteen days after the production of the documents. (*Id.*) The motion is fully briefed.[1] (Docs. 292, 294.) As set forth below, the Court grants Petitioners' motion.

---

[1] The parties have advised the Court that this motion is unresolved. (Doc. 324.)

**I.  Background**

On December 16, 2016, the Court entered a Judgment in this action in favor of Petitioners and against Respondents Eva Sperber-Porter, Baseline & Val Vista Associates, LP, Litchfield Road Associates, LP, Joseph Baldino and Helen Baldino, husband and wife, the Baldino Family Revocable Living Trust, and the Meridian Financial Corporation Profit Sharing and Retirement Trust (collectively, the "Respondents"). (Doc. 33.) On April 20, 2018, the Baldinos filed a Motion for Relief from Judgment Pursuant to Rule 60(b)(5).[2] (Doc. 260.) In that motion, the Baldinos argued that the Judgment had been paid in full and that they were entitled to a satisfaction of the Judgment. (*Id*.) Sperber-Porter joined in that motion. (Doc. 272.) On May 11, 2018, Sperber-Porter filed a Motion to Release Judgment Lien. (Doc. 276.) On August 2, 2018, the Court denied the motion for relief from judgment and the motion to release judgment lien.[3] (Doc. 313.)

On February 16, 2018, Petitioners obtained an amended writ of general execution (the "amended writ") issued against the Sperber-Porter Judgment Debtors that calculated damages after interest and recoveries already received.[4] (Doc. 313 at 2, Doc. 234.) On April 25, 2018, Petitioners served Sperber-Porter with a subpoena to testify at a deposition. (Doc. 273, Ex. 1; Doc. 283.) The subpoena also directed Sperber-Porter to produce numerous documents. (Doc. 283; Doc. 273, Ex. 1 at 3-7.) On May 9, 2018, Sperber-Porter filed an objection to the subpoena. (Doc. 273.) In her objection, Sperber-Porter argued that (1) the subpoena is moot because the Judgment had been satisfied, and (2) the subpoena is overly broad because it seeks documents and testimony relating to

---

[2] The Court refers to Joseph Baldino and Helen Baldino, husband and wife, the Baldino Family Revocable Living Trust, and the Meridian Financial Corporation Profit Sharing and Retirement Trust as the "Baldinos."

[3] The procedural history, the parties' arguments that the Judgment has been satisfied, and the Court's August 2, 2018 Order are summarized in the order denying the motion to compel the Baldinos' depositions and the motion seeking authorization to serve subpoenas. (Doc. 327.) That background information is not reiterated in this order.

[4] The "Sperber-Porter Judgment Debtors" refers to Eva Sperber-Porter, Baseline & Val Vista Associates, LP, and Litchfield Road Associates, LP. (*See* Doc. 234 at 1-2.)

community assets. (*Id* at 3-5.) Sperber-Porter also argued that, if she is required to comply with the subpoena, the Court should enter a protective order. (*Id*. at 5-6.) Petitioners filed a motion to compel Sperber-Porter to comply with the subpoena, Sperber-Porter filed a response, and Petitioners filed a reply. (Docs. 287, 292, 294.)

**II.   Motion to Compel**

   **A.   Mootness**

In her objection to the subpoena and in response to the motion to compel, Sperber-Porter argued that the subpoena is moot because Respondents have paid the full amount of the "non-contingent portion" of the Judgment. (Doc. 273 at 3; Doc. 292 at 2-6.) The Court, however, rejected that argument in its August 2, 2018 Order in which it concluded that the "[t]he Judgment will not be satisfied until the funds are paid from the GT Settlement, as well as accrued interest since April 20, 2018." (Doc. 313 at 9.) The Court denied the Baldinos' motion for relief from judgment and Sperber-Porter's motion to release judgment lien. (*Id*. at 9-10.) Because the Court has not determined that the Judgment has been paid in full, the Court rejects Sperber-Porter's mootness objection to the subpoena.[5]

   **B.   Scope of Subpoena**

In the alternative, Sperber-Porter argues that the subpoena is overly broad because it seeks information related to her marital community property, which is not liable for the Judgment. (Doc. 273 at 4-5.) Specifically, she notes that the subpoena seeks the production of "bank statements for all accounts belonging to you or in which you have or have had any interest from January 1, 2013 to the present." (Doc. 273 at 5, Doc. 273, Ex. 1 at 3.) She also notes that the subpoena seeks copies of her tax returns for 2011 through 2018, including copies of her K-1 schedules.[6] (Doc. 273 at 5; Doc. 273, Ex. 1

---

[5] Because the Court overrules the mootness objection to the subpoena, it does not consider Petitioners' argument that the objection failed to comply with Rule 62(b), which applies to a stay of an execution of judgment. *See* Fed. R. Civ. P. 62(b); (Doc. 287 at 5.)

[6] The subpoena requests the production of many other documents, but Sperber-Porter does not specifically object to any of the other requests. (Doc. 273, Ex. 1 at 3-7.)

at 3.) Sperber-Porter states that she and her husband have always filed a joint tax return. (Doc. 273 at 5.) She asserts that her husband, a non-party, is not required to produce the requested information regarding his finances and tax returns and that his "privacy interests in the third party financial information must be respected and protected by this court." (Doc. 273 at 5; Doc. 292 at 6-7.) Sperber-Porter asserts that the Court should "quash and/or modify those parts of the Subpoena that are overly broad and request documents from a non-party to the Judgment." (Doc. 292 at 7, 10; Doc. 273 at 4.)

### 1. Rules 45(d)(3), 69(a)(2), and 26(b)

The Court applies Rule 45(d)(3) of the Federal Rules of Civil Procedure to the pending motion to compel because Sperber-Porter asserts that the Court should quash or modify the subpoena to protect her husband's privacy interest in the requested financial information. Rule 45(d)(3)(A) identifies circumstances in which a court is required to grant a motion to quash or modify a subpoena. Rule 45(d)(3)(A)(iii) provides in pertinent part that "[o]n a timely motion, the issuing court must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).

The Court also applies Rule 69(a)(2) to Sperber-Porter's objection to the subpoena. Rule 69(a)(2) authorizes discovery in judgment enforcement proceedings and provides that a judgment creditor "may obtain discovery from *any* person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2) (emphasis added). "This rule entitles a judgment creditor to 'a very thorough examination of the judgment debtor.'" *Internet Direct Response, Inc. v. Buckley*, 2010 WL 1752181, at *2 (C.D. Cal. Apr. 29, 2010) (quoting *Credit Lyonnais, S.A. v. SGC Intl., Inc*., 160 F.3d 428, 430-31 (8th Cir. 1998)). "A judgment creditor 'must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor.'" *Sequoia Prop. & Equip. Ltd. P'ship v. United States*, 2002 WL 32388132, at *3 (E.D. Cal. June 3, 2002) (quoting *Caisson Corp. v. County West Bldg. Corp*., 62 F.R.D. 331, 334 (E.D. Pa.1974)). Thus, "[t]he

presumption should be in favor of full discovery of any matters arguably related to the [creditor's] efforts to trace [the debtor's] assets and otherwise to enforce the judgment." *Internet Direct*, 2010 WL 1752181, at *2 (quoting *Credit Lyonnais*, 160 F.3d at 430-31). Under Rule 69, a judgment creditor may obtain discovery from parties and non-parties. *See Caisson Corp.*, 62 F.R.D. at 335. Discovery into a third-party's assets is permissible when the "relationship between the judgment debtor and the [third-party] is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them." *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 562 (S.D.N.Y.1977) (citing *Caisson Corp.*, 62 F.R.D. at 335).

Rule 26 is also relevant to the consideration of Sperber-Porter's objections and the motion to compel because it defines the permissible scope of discovery and that same scope of discovery applies to a Rule 45 subpoena. *See Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003) (stating that when considering a motion to quash a subpoena *duces tecum*, the court must also consider whether the subpoena "is overly broad or seeking irrelevant information under the same standards set forth in Rule 26(b)"). Rule 26(b) provides for a broad scope of discovery. Fed. R. Civ. P. 26(b)(1).

### 2. Analysis

As set forth above, Sperber-Porter objects to the subpoena and asserts that it should be modified because it is "overly broad" in seeking bank statements and tax returns that will include "private" "financial information with respect to [her husband's] income and investments," but he is not liable on the Judgment. (Doc. 292 at 6; Doc. 273 at 4-5.) Sperber-Porter asserts that the requested information is "private" and that her husband has a privacy interest in that information. (Doc. 292 at 6.) However, she does not specifically argue that the requested documents are privileged. *See* Rule 45(d)(3)(A)(iii); (Doc. 292 at 6.) Sperber-Porter asserts that her husband has a privacy interest in the bank statements and tax returns, but she has not explained how that alleged privacy interest makes the requested documents "other protected matters" for purposes of Rule 45(d)(3)(A)(iii). (Doc. 292 at 6-7.) Therefore, Sperber-Porter has not satisfied her

burden of showing that the subpoena that was served on her on April 25, 2018 should be quashed or modified under Rule 45(d)(3)(A)(iii).

Additionally, as Petitioners assert in their motion to compel, this Court has considered and rejected similar objections that Helen Baldino and Sperber-Porter made to subpoenas that were served on several banks. (*See* Docs. 116, 117, 118, 119, 121.) Similar to Sperber-Porter's current objections, she and Helen Baldino previously objected to the relevancy of financial information of third parties on the ground that they were not liable for the Judgment. (Doc. 116 at 4; Doc. 118 at 4; Doc. 119 at 3-4.) In a November 6, 2017 Order, the Court concluded that Petitioners were entitled to discover documents and information related to the third parties' assets. (Doc. 161 at 11.) The Court concluded that discovery of a third-party's asserts is permissible in some circumstances, and stated:

> Although a judgment creditor's right to discover financial information of non-debtors is more limited, "[d]iscovery into a third-party's assets is permissible where the relationship between the judgment debtor and the non-party is sufficient to raise a reasonable doubt as to the bona fides of the transfers between them." *Textron Fin. Corp. v. Gallegos*, 2016 WL 4077505, at *3 (S.D. Cal. Aug.1, 2016); *see United States v. Neumann*, 1999 WL 156151, at *1 (D. Mass. Mar. 5, 1991) (permitting discovery of assets of judgment debtor's husband, who was also her employer, noting that husband had a personal financial interest in his wife's debt and an interest in concealing her true income).

(Doc. 161 at 10.) The Court further noted that Petitioners were entitled to trace assets of their judgment debtors. (*Id*. at 11, 14-15.)

The Court also considered similar issues in its December 8, 2017 Order in which it denied Sperber-Porters's and the Intervenors' motion to quash a subpoena *duces tecum* that was served on Wells Fargo Bank seeking documents related to accounts owned or controlled by Sperber-Porter.[7] (Doc. 179.) The reasoning in that order also supports the Court's conclusion in this order. (*Id*. at 6, 11.) Specifically, the Court concluded that

---

[7] The Intervenors were Regal Car Wash XIX Associates, LP, Regal Car Wash XXIII Associates, LLC, and NM Clean I, LLC. (Doc. 179 at 1.)

bank records were not privileged. (*Id*. at 6-9.) The Court further found that considering the scope of discovery permitted under Rule 69(a), and the close relationship between Sperber-Porter and entities' bank accounts at issue, the subpoenas sought relevant information. (*Id*. at 11-12.)

For reasons similar to those stated in the Court's November 6 and December 8, 2017 Orders (Docs. 161, 179), including the broad scope of discovery permitted under Rule 69(a) and the relationship between Sperber-Porter and her spouse, the Court rejects Sperber-Porter's objection that the discovery sought in the subpoena at issue is overly broad. *See* Rule 69(a)(2) (providing that a judgment creditor "may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located."); *see also Nat'l. Union Fire Ins. Co. v. Van Waeyenberghe*, 148 F.R.D. 256, 257 (N.D. Ind. 1993) (stating that "it should be beyond question that a judgment creditor is allowed to ask a judgment debtor for asset and financial information relating to the debtor's spouse or other family members" and granting motion to compel judgment debtor to respond to interrogatories that sought information about his employment, assets, and finances, and such information about his spouse).

### C. Request for a Protective Order

Sperber-Porter asserts that, if the Court grants the motion to compel, it should enter a protective order that limits disclosure of the documents and testimony to Petitioners' legal counsel only and prohibits disclosure to Petitioners. (Doc. 273 at 6; Doc. 292 at 7.) Sperber-Porter argues that ethical concerns and Petitioners' fiduciary duties necessitate the protective order. Petitioners oppose this request and argue that, as it has done in past orders, the Court should order that "'[d]isclosures made pursuant to [the subpoena] may be used only for the purposes of satisfying the judgment.'" (Doc. 287 (citing Doc. 161 at 16; Doc. 179 at 13).)

///

///

### 1.     Conflict of Interest

In support of her request for a protective order, Sperber-Porter asserts that Petitioners have an impermissible conflict of interest that she has not waived. (Doc. 292 at 7 (citing ER 1.9(a)).)[8] Sperber-Porter suggests that this conflict of interest raises concerns that Petitioners may disclose documents or testimony produced in response to the subpoena to "the Ashkenazi Plaintiffs." (Doc. 292 at 7.) Sperber-Porter states that Petitioners are two lawyers and their law firms. (Doc. 273 at 5.) She states that Petitioners are her former attorneys and they represented her and other investors, the Ashkenazi Plaintiffs, in a "mass-action" lawsuit in the Maricopa County Superior Court against Greenberg Traurig ("GT"). (Doc. 292 at 7.) Sperber-Porter further notes that the Ashkenazi Plaintiffs have sued her in the Maricopa County Superior Court. (*Id.*) Sperber-Porter asserts that Petitioners continue to play a role in that litigation. (*Id.*)

Petitioners argue that the Court should reject Sperber-Porter's conflict-of-interest argument, which has twice been rejected by the Maricopa County Superior Court. (Doc. 294 at 4.) To support that argument, Petitioners have attached to their reply the filings from the state court matter. Those state-court filings reflect that Sperber-Porter moved to disqualify Petitioners from representing the Ashkenazi Plaintiffs in the state court action against GT (the "GT Action"). Specifically, in November 2012, after Sperber-Porter had retained her current counsel, she and the other Respondents filed a motion to disqualify Petitioners from representing any party in that action. (Doc. 294, Ex. A.) The motion argued Petitioners were violating ER 1.9(a) by continuing to represent the Ashkenazi Plaintiffs in that lawsuit. (Doc. 294, Ex. A at 7-8.) The superior court denied that motion. (Doc. 294, Ex. B at 3.) In June 2015, Sperber-Porter again moved to disqualify Petitioners from representing the Ashkenazi Plaintiffs on the ground

---

[8] The Rules of Professional Responsibility are set forth in Rule 42 of the Rules of the Supreme Court of Arizona. ER 1.9(a) provides that "[a] lawyer who has formerly represented a client in a matter shall not represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."

that "material facts had changed" since the superior court had denied the prior motion. (Doc. 294, Ex. C.) Sperber-Porter again argued that ER 1.9(a) precluded Petitioners from representing the Ashkenazi Plaintiffs in that case. (Doc. 294, Ex. C at 5-7.) The superior court denied the motion. (Doc. 294, Ex. D.)

Petitioners assert the superior court's orders are final because they were not challenged in the two appeals from the GT Action. (Doc. 294 at 4.) Petitioners argue that Sperber-Porter is precluded from again asserting that Petitioners have a conflict of interest based on their continued representation of the Ashkenazi Plaintiffs in state court. (Doc. 294 at 5.) Petitioners also argue that they are not counsel in this action, but parties. They also note that the Ashkenazi Plaintiffs are their clients in the appeal of the GT Settlement. (Doc. 287 at 8.) However, the Ashkenazi Plaintiffs are represented by separate counsel in the lawsuit brought by the Ashkenazi Plaintiffs against Sperber-Porter and the other Respondents. (*Id.*)

Sperber-Porter's assertion of a conflict-of-interest does not support entering the protective order that she requests. The superior court has considered the alleged conflict of interest and has denied motions to disqualify Petitioners from representing the Ashkenazi Plaintiffs on that basis. Sperber-Porter does not explain how ER 1.9(a), which prohibits a lawyer from representing a person whose interests are adverse to that lawyer's former client, applies to Petitioners who are parties in this matter, not lawyers representing a party. Finally, Sperber-Porter does not explain why the possible conflict of interest makes it likely that the Petitioners would disregard an admonition that any documents or testimony disclosed pursuant to the subpoena only be used for purposes of satisfying the Judgment

### 2. Joint Venture or Partnership Agreement

Sperber-Porter also asserts that the existence of a joint venture or partnership agreement necessitates the protective order that she has requested. (Doc. 273 at 6.) She argues that, in connection with the state court action, Petitioners and the Ashkenazi Plaintiffs agreed to split any monies recovered on the Judgment entered by this Court.

(*Id*.; Doc. 292 at 8.)  That agreement provides that Petitioners will retain 21.5% of that amount, and that the Ashkenazi Plaintiffs will receive 78.5% of that amount.  (Doc. 273 at 6 (citing Doc. 260 at 3-4); Doc. 292 at 8.)  Sperber-Porter maintains that "Petitioners and the Ashkenazi Plaintiffs are parties to a joint venture or partnership agreement with respect to collection on the Judgment."  (Doc. 292 at 8.)  She asserts that "this business arrangement raises additional ethical concerns" because the "business relationship between the Petitioners and the Ashkenazi Plaintiffs would need to be properly documented in accordance with ER 1.8(a)." (*Id*.)  Sperber-Porter asserts that because the Ashkenazi Plaintiffs have a greater percentage interest in the Judgment than Petitioners, the Ashkenazi Plaintiffs have "a vested controlling interest in obtaining Sperber-Porter's financial information—not only for use in this case but for use in the pending state court litigation as well." (*Id*.)

Petitioners dispute Sperber-Porter's assertion that they have an agreement with the Ashkenazi Plaintiffs to split "any monies received by Petitioners on the Judgment." (Doc. 294 at 5.)  Rather, Petitioners state that they have "agreed with their clients the Ashkenazi Plaintiffs to split the funds from two sources: (1) the funds interpleaded by ML Manager, and (b) the Respondents' share of the GT Settlement. (*Id*., Ex. E at 4.)  As Petitioners point out, Sperber-Porter has not offered any evidence of an agreement between Petitioners and the Ashkenazi Plaintiffs to split the monies received on the Judgment entered in this Court.  In the absence of such evidence, the Court finds that the alleged agreement does not support entering the protective order that Sperber-Porter requests.

Sperber-Porter also argues that there is a "joint venture relationship between Petitioners and the Ashkenazi Plaintiffs." (Doc. 292 at 8.)  Petitioners dispute that assertion. (Doc. 294 at 6-7.)  "A joint venture is formed when two or more parties agree to pursue a particular enterprise in the hope of sharing a profit."  *Ellingson v. Sloan*, 527 P.2d 1100, 1103 (Ariz. Ct. App. 1974).  In Arizona, five elements must exist to establish a joint venture: "(1) a contract, (2) a common purpose, (3) a community of interest, (4) an

equal right of control, and (5) participation in both profits and losses." *Id.* Sperber-Porter does not address these elements in her objection to the subpoena or in her response to the motion to compel. (Docs. 273, 292.) Because Sperber-Porter's briefing on this issue is inadequate for the Court to determine whether a joint venture exists, the Court will not issue the requested protective order based on the alleged existence of a joint venture.

Finally, Sperber-Porter argues that the requested protective order is necessary because Petitioners have a fiduciary duty to disclose to the Ashkenazi Plaintiffs all financial information that they receive from Sperber-Porter, including her husband's financial information. (*Id.* at 9.) Sperber-Porter's fiduciary duty argument is based on the alleged existence of a joint venture. (*Id.* at 8.) The Court has not found that a joint venture exists. Therefore, the Court rejects Sperber-Porter's arguments based on an alleged fiduciary relationship and a related duty of disclosure. Additionally, the Court finds that there is no need to hold an evidentiary hearing on this issue.

For these reasons, the Court denies Sperber-Porter's request for a protective order that would include the terms listed in her objection and in her response to the motion to compel. (Docs. 273 at 5-6; Doc. 292 at 7-10.) However, the Court will restrict any disclosures of documents or oral testimony made pursuant to the subpoena as restricted in earlier orders. Therefore, disclosures made pursuant to the subpoena may only be used for purposes of satisfying the Judgment.

Accordingly,

**IT IS ORDERED** that Petitioners' Motion to Compel Compliance with Subpoena (Eva Sperber-Porter) (Doc. 287) is **GRANTED** and that: (1) within **thirty days** of the date of the order, Sperber-Porter shall produce all of the documents described in the subpoena (*see* Docs. 273, Ex. 1; Doc. 283); and (2) within **fourteen days** after the production of the documents, Sperber-Porter shall appear for a deposition at a mutually agreed-upon date and time.

**IT IS FURTHER ORDERED** that disclosures made or testimony given pursuant to the subpoena that Petitioners served on Sperber-Porter (Doc. 273, Ex. 1; Doc. 283.) may only be used for purposes of satisfying the Judgment.

Dated this 23rd day of August, 2018.

_____
Bridget S. Bade
United States Magistrate Judge